# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between the Consent Plaintiffs, on behalf of themselves and the Subsequent Class Members; JBRE GA, LLC d/b/a/ Just Brakes; and Erik Passaro, by and through their respective counsel of record, subject to the terms and conditions hereof and the approval of the Court.

## I. RECITALS:

A. WHEREAS, on May 5, 2015, Richard Kobelt filed a Complaint against JBRE GA, LLC d/b/a/ Just Brakes and Erik Passaro alleging that he and those similarly situated to him were not paid in accordance with the Fair Labor Standards Act ("FLSA");

B. WHEREAS, since the filing of the Complaint, 7 additional individuals have filed forms whereby they consented to participating in the Lawsuit: Johnny Jones, Michael Tye, Oliver Simon, Kenneth Jackson, Brittany Davis, Joe Korey Brown, and Ryan Dailey;

C. WHEREAS, by Order dated October 27, 2015, the Court conditionally certified the Lawsuit as a collective action;

D. WHEREAS, the Parties desire to avoid further litigation and to fully and expeditiously settle the Lawsuit, as well as any and all wage-and-hour claims that the Consent Plaintiffs and the Subsequent Class Members have or may have had against the Just Brakes Parties arising out of or relating to their employment with one or more of the Employers;

E. WHEREAS, the Parties have been able to reach an agreement to settle the claims on the terms contained herein; and

F. WHEREAS, nothing contained herein, nor the consummation of this Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of the Just Brakes Parties.  Each of the Parties hereto has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

NOW THEREFORE, in consideration of the compensation, mutual agreements, definitions, and covenants contained herein, the Parties agree as follows:

## II. DEFINITIONS

### A. *Lawsuit & Court*

1. **LAWSUIT**: The term "Lawsuit" refers to the action for damages filed on May 5, 2015 with the United States District Court, Northern District of Georgia (Atlanta Division) styled *Richard Kobelt v. JBRE GA, LLC d/b/a Just Brakes and Eric Passaro,* Civil Action No. 1:15-CV-01550-MHC.

2. **COURT:** The term "Court" refers to the U.S. District Court for the Northern District of Georgia, Atlanta Division.

B. **Parties**

1. **CONSENT PLAINTIFFS**: The term "Consent Plaintiffs" refers to the named Plaintiff Richard Kobelt, as well as Johnny Jones, Michael Tye, Oliver Simon, Kenneth Jackson, Brittany Davis, Joe Korey Brown, and Ryan Dailey.  This term is also intended to include their agents, representative, assignees, heirs, executors, beneficiaries, and trustees.

2. **EMPLOYERS:** The term "Employers" refers to JBRE GA, LLC d/b/a Just Brakes, Eric Passaro, and any other Employee that is considered an "employer" as that term is defined by the FLSA.

3. **JUST BRAKES PARTIES**: The term "Just Brakes Parties" refers to the Employers, as well as to the divisions, subsidiaries, parents, affiliates, partners, members, related entities, predecessors, successors, assigns, trustees, officers, officials, directors, shareholders, employees, agents, joint venturers, former and current insurers, affiliated owners, and attorneys of the corporate Employers, and the agents, representative, partners, assigns, employees, former and current insurers, heirs, executors, beneficiaries, attorneys, and trustees of the individual Employers.

4. **EMPLOYEES**: The term "Employees" refers to all individuals who have been or are now employed by one or more of the Employers.

5. **PUTATIVE SUBSEQUENT CLASS MEMBER:** The term "Putative Subsequent Class Member" refers to any Employee other than the Consent Plaintiffs who works or worked as a Technician during the Claims Period.

6. **SUBSEQUENT CLASS MEMBER:** The term "Subsequent Class Member" refers to any Putative Subsequent Class Member who submits a Claim Form pursuant to this Agreement within the Opt-In Period.

7. **PLAINTIFFS' COUNSEL:**  The term "Plaintiffs' Counsel" refers to Dustin Crawford, Esq. and John L. Mays, Esq. of Mays & Kerr, LLC.

8. **JUST BRAKES PARTIES' COUNSEL:** The term "Just Brakes Parties' Counsel" refers to Chad A. Shultz, Esq., Leslie K. Eason, Esq., and Julia C. Glasgow, Esq. of Gordon & Rees LLP.

9. **PARTIES:** The term "Parties" refers to the Consent Plaintiffs, the Subsequent Class Members, and the Just Brakes Parties collectively.

C. **Dates & Times**

1. **DATE OF EXECUTION:** The term "Date of Execution" refers to the date on which the last Consent Plaintiff executes this Agreement.

2. **EFFECTIVE DATE:** The "Effective Date" refers to the date that the Settlement has been finally approved by the Court.

3. **CLAIMS PERIOD:** The "Claims Period" is defined as the time period May 5, 2012 until December 31, 2015.

4. **OPT-IN PERIOD**: The "Opt-In Period" shall mean the period of time lasting for 60 days starting from the date upon which Notice is first mailed to the Putative Subsequent Class Members. (For example, if Notice is first mailed on February 1, 2016, the Opt-In Period shall be from February 1, 2016 to April 1, 2016.) Putative Subsequent Class Members' Claim Forms must have been postmarked on or before the end of this period in order for them to qualify as Subsequent Class Members.

5. **CLAIMS ADMINISTRATION PERIOD**: The "Claims Administration Period" shall be the time beyond the Opt-In Period during which time the Claims Administrator should complete all administration of claims.

6. **WIND DOWN PERIOD:** The "Wind Down Period" shall mean the period of time from the Effective Date through and including the date upon which the Court dismisses the Lawsuit, and includes both the Opt-In Period and the Claims Administration Period.

D. *Settlement Terms*

1. **SETTLEMENT:** The term "Settlement" refers to the terms, conditions, and agreements contained in this Agreement and all actions necessary to implement and obtain final approval of the Settlement.

2. **WORKWEEK(S)**: The term "Workweek(s)" refers to any workweek(s) during the Claims Period during which a Putative Subsequent Class Member worked for an Employer.

3. **RESERVE FUND:** The term "Reserve Fund" refers to the maximum payment the Just Brakes Parties will make under the Settlement to Subsequent Class Members. The Reserve Fund amount is $475,000.

4. **PERCENTAGE OF PARTICIPATION:** The term "Percentage of Participation" refers to the percentage of Putative Subsequent Class Members who subsequently become Subsequent Class Members. For example, if 10 out of 100 Putative Subsequent Class Members become Subsequent Class Members, the Percentage of Participation would be 10%.

5. **PORTIONED RESERVE FUND:** The term "Portioned Reserve Fund" refers to the Reserve Fund multiplied by Percentage of Participation. For example, the Reserve Fund multiplied by a 10% Percentage of Participation would be $47,500 ($475,000 * 10%).

6. **ATTORNEYS' FEES:** The term "Attorneys' Fees" refers to the total amount to be paid to Plaintiffs' Counsel for representing the Consent Plaintiffs and the Subsequent Class Members. The amount of Attorneys' Fees is $85,000.

7. **ALLOCATED SHARE:** The term "Allocated Share" refers to the portion of the Reserve Fund calculated according to the Formula which a Subsequent Class Member is

entitled to receive if he/she timely files a valid Claim Form and completes the appropriate wage-and-hour release.

8. **FORMULA:** Each Subsequent Class Member's Allocated Share will be calculated using the following steps (the "Formula"):

   a. ***Step One:*** After the receipt of all Claim Forms, the Claims Administrator will calculate the Percentage of Participation.

   b. ***Step Two:*** The Claims Administrator will then calculate the Portioned Reserve Fund.

   c. ***Step Three:*** The Claims Administrator will determine the number of Workweeks worked by each Subsequent Class Member.

   d. ***Step Four:*** The Claims Administrator will calculate the total number of Workweeks worked collectively by all of the Subsequent Class Members ("Total Workweeks").

   e. ***Step Five:*** The Claims Administrator will calculate what percentage of the Total Workweeks each Subsequent Class Member worked ("Percentage of Total Workweeks").

   f. ***Step Six:*** The Claims Administrator will multiply the Percentage of Total Workweeks for each Subsequent Class Member by the Portioned Reserve Fund to determine each Allocated Share.

   g. ***Example:*** The total number of Putative Subsequent Class Members totals 200. Out of that 200, 3 become Subsequent Class Members, resulting in a 1.5% Percentage of Participation. The Reserve Fund is $475,000. The Portioned Reserve Fund is therefore $7,125 ($475,000 * 1.5%). The 3 Subsequent Class Members worked 10, 20, and 30 Workweeks respectively, making the Total Workweeks 60. The Percentage of Total Workweeks for the 3 Subsequent Class Members is 16.67% (10 divided by 60), 33.33% (20 divided by 60), and 50% (30 divided by 60), respectively. The Allocated Share for the 3 Subsequent Class Members is therefore $1,187.73 (16.67% of $7,125), $2,374.76 (33.33% of $7,125), and $3,562.50 (50% of $7,125) respectively.

9. **NOTICE:** The term "Notice" refers to the Notice of Collective Action Settlement that shall be mailed to each Putative Subsequent Class Member to explain the terms of the Settlement and the claims process. The Notice shall include a neutral description of the Lawsuit and a generic statement that a claim may be filed by completing a Claim Form. The Notice shall disclose the contact information for Counsel for the Parties and the Claims Administrator. Counsel for the Parties shall agree on the form and language of the Notice no later than 7 days after the Effective Date. Should counsel for the Parties be unable to reach an agreement concerning the form and language of the Notice, they will submit their proposed notices to the Court for purposes of the Court deciding which Notice shall be used.

10. **CLAIM FORM:** The term "Claim Form" refers to the form that shall be mailed to each Putative Subsequent Class Member that each Putative Subsequent Class Member must complete in full and timely return to the Claims Administrator to become a Subsequent Class Member. Each Claim Form will identify the Putative Subsequent Class Member's dates of employment during the Claims Period, as well as a description of the Formula that will be used to determine their Allocated Share. In the event a Subsequent Class Member disputes the information on the Claim Form, the Just Brakes Parties' records will be presumed to be correct, but that presumption may be rebutted by the Subsequent Class Member's production of documentation rebutting that presumption. The Claims Administrator will resolve all such disputes, and the Claims Administrator's resolution will be binding on all parties. Counsel for the Parties shall agree on the form and language of the Claim Form no later than 7 days after the Effective Date. Should counsel for the Parties be unable to reach an agreement concerning the form and language of the Claim Form, they will submit their proposed forms to the Court for purposes of the Court deciding which Claim Form shall be used.

11. **CLAIMS ADMINISTRATOR:** The term "Claims Administrator" refers to the third-party claims administrator to be selected and employed by the Just Brakes Parties. The Claims Administrator's fees and expenses will be paid by the Just Brakes Parties (except to the extent listed below) and are not included in the Reserve Fund.

### III. PAYMENT AND CONSIDERATION:

#### A. THE CONSENT PLAINTIFFS

1. In consideration for the promises and covenants contained in this Agreement, Consent Plaintiffs shall collectively receive as full and final payment the total sum of $48,000 ("Consent Plaintiffs' Settlement Amount"), divided among the Consent Plaintiffs as follows based on the number of Workweeks worked by each:

| Last Name | Non-Exempt Workweeks | % of Opt-In Workweeks | Share of Total Consent Plaintiff's Settlement Amount |
|---|---|---|---|
| Davis | 104 | 14.7% | $7,060.82 |
| Brown | 144 | 20.4% | $9,776.52 |
| Jones | 47 | 6.6% | $3,190.95 |
| Jackson | 142 | 20.6% | $9,640.74 |
| Tye | 118 | 16.7% | $8,011.32 |
| Kobelt | 24 | 3.4% | $1,629.42 |

| | | | |
|---|---|---|---|
| Dailey | 8 | 1.1% | $543.14 |
| Simon | 120 | 17.0% | $8,147.10 |

   In addition, Richard Kobelt shall receive an additional $2,000 (collectively, with the Consent Plaintiffs' Settlement Amount, the "Total Consent Plaintiffs' Settlement Amount").

2. The payment to each Consent Plaintiff will be equally divided between back pay, less standard deductions (reported via IRS Form W-2) and liquidated damages paid without deductions (reported via IRS Form 1099). The Just Brakes Parties will issue Plaintiffs' Counsel two checks for each Consent Plaintiff – one reflecting the back pay portion and one reflecting the liquidated damages portion – no later than 30 days after the Effective Date.  Plaintiffs' Counsel shall submit to Just Brakes Parties' Counsel an IRS W-9 Form for each of the Consent Plaintiffs on the Date of Execution.

3. The Consent Plaintiffs agree that the Total Consent Plaintiffs' Settlement Amount constitutes good, valid, and sufficient consideration for this Settlement.  The Consent Plaintiffs further agree that, upon receipt of the Total Consent Plaintiffs' Settlement Amount, they have been properly paid for any and all claims under the FLSA and any and all wage and hour claims or causes of action of whatever kind or nature, whether known or unknown, that could have been raised in the Lawsuit or by any other means against one or more of the Employers based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the Effective Date of this Agreement.

4. The Consent Plaintiffs also acknowledge and agree that the Total Consent Plaintiffs' Settlement Amount constitutes the entire amount of money or other benefits that the Consent Plaintiffs shall receive in exchange for their full, final, and complete release of all their asserted or unasserted wage and hour claims against the Just Brakes Parties.  In addition, the Consent Plaintiffs acknowledge and agree that the Total Consent Plaintiffs' Settlement Amount constitutes consideration to which they would not otherwise have been entitled and is being paid in exchange for execution of this Agreement.

5. The Consent Plaintiffs acknowledge that the amount designated as back pay is subject to all applicable local, state, and federal withholdings, which will be deducted based on the information then on file with the Employers.  The corporate Employers will be responsible for paying the Employers' portion of any and all applicable payroll taxes relating to the portion of the Total Consent Plaintiffs' Settlement Amount designated as back pay. The Consent Plaintiffs agree that they will be responsible for any and all additional taxes, interest, or penalties that are payable or assessed in connection with payment of the amount designated as back pay.  The Consent Plaintiffs agree to indemnify and hold the Just Brakes Parties harmless with respect to any such additional taxes, interest, or penalties.

6. The Parties acknowledge that for the amount designated as liquidated damages, the Consent Plaintiffs are responsible for any tax obligations that they may owe arising from the disbursement. The Just Brakes Parties will not assume responsibility for any tax obligations, interest, or penalties arising from the liquidated damages disbursement. The Consent Plaintiffs agree to indemnify and hold the Just Brakes Parties harmless with respect to such taxes, interest, or penalties.

B. **ATTORNEYS' FEES & COSTS**

1. In consideration for the promises and covenants contained in this Agreement, Plaintiffs' Counsel shall receive the total sum of $85,000 for Attorneys' Fees as full and final payment of any fees and costs for services rendered in connection with their representation of the Consent Plaintiffs and the Putative Subsequent Class Members.

2. The Just Brakes Parties shall issue Plaintiffs' Counsel a single check in the amount of $85,000 for the Attorneys' Fees no later than 30 days after the Effective Date. Plaintiffs' Counsel shall submit to the Just Brakes Parties' Counsel an IRS W-9 Form for their firm on the Date of Execution.

3. The Consent Plaintiffs and Plaintiffs' Counsel agree that the Attorneys' Fees constitute the full extent of all fees and costs actually incurred in connection with services rendered for the Consent Plaintiffs and the Putative Subsequent Class Members, and that they will not seek a further award of attorneys' fees, expenses, or costs for services rendered for the Consent Plaintiffs and Putative Subsequent Class Members.

4. The Attorneys' Fees are paid in full and complete settlement of all attorneys' fees, costs and expenses to be paid by the Just Brakes Parties to the Consent Plaintiffs, Plaintiffs' Counsel, and the Putative Subsequent Class Members.

5. Plaintiffs' Counsel is responsible for any tax obligations that they may owe arising from the disbursement of the Attorneys' Fees. The Just Brakes Parties will not assume responsibility for any tax obligations, interest, or penalties arising from such disbursement. Plaintiffs' Counsel agrees to indemnify and hold the Just Brakes Parties harmless with respect to such taxes, interest, or penalties related to payment of the Attorneys' Fees.

C. **Subsequent Class Member Claims**

1. Only Subsequent Class Members who execute the Claim Form and appropriate release will be entitled to receive an Allocated Share.

2. The amount paid for each Subsequent Class Member's Allocated Share shall be designated as liquidated damages and will be reported as such pursuant to an IRS Form W-9. The Subsequent Class Members are responsible for any tax obligations that they may owe arising from such disbursement. The Just Brakes Parties will not assume responsibility for any tax obligations whatsoever arising from such disbursement. Each Subsequent Class Member will be required to indemnify and hold the Just Brakes Parties harmless with respect to such taxes, interest, or penalties.

    Each Putative Subsequent Class Member will be sent an IRS Form 1099 to be completed and returned with the Claim Form.

3. With respect to administration of the Subsequent Class Member claims, the Parties will defer to the Claims Administrator regarding the specifics of the manner in which it performs the administration, understanding that the Claims Administrator is in the best position to identify the most effective methodology for the same given its past experience and knowledge concerning industry standards.  It is the Parties' intent to submit the following proposed guidelines to the Claims Administrator concerning its administration, understanding that the Claims Administrator will make the final decision regarding whether such guidelines are feasible and/or the best industry standard practices:

   a. Within 10 days after the Effective Date, the Just Brakes Parties will provide the Claims Administrator the names, last known addresses, and number of Workweeks worked for each Putative Subsequent Class Member.  The Claims Administrator will keep this information confidential and use it only for the purposes described herein.

   b. After receiving the above-described contact information from the Just Brakes Parties, the final Notice, and the final Claim Form, the Claims Administrator will commence the mailing of the Notices, Claim Forms, and IRS Form 1099s to the Putative Class Members.

   c. In order to claim his/her Allocated Share of the Reserve Fund, a Subsequent Class Member must accurately complete and sign the Claim Form and submit the form and appropriate identification directly to the Claims Administrator at the address indicated on the Claim Form during the Opt-In Period.  No Claim Forms will be honored if postmarked outside the Opt-In Period.

   d. In the event a Claim Form is submitted timely but is deficient in one or more aspects, the Claims Administrator shall return the Claim Form to the claimant with a letter explaining the deficiencies and the claimant shall have 14 calendar days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form.  The resubmitted Claim Form must be postmarked within 14 calendar days of the date of the deficiency notice or from the deadline for filing claims, whichever is later, to be considered timely.  No claimant will be provided a second notice of deficiency, except upon a showing of good cause.

   e. In the event of returned or non-deliverable Notices, the Claims Administrator will provide a report of the same, if requested by counsel or the Court. The costs of any such request by Plaintiffs' Counsel shall be incurred solely by Plaintiffs' Counsel. The costs of any such request by the Court or the Just Brakes Parties shall be incurred by the Just Brakes Parties.

   f. The Claims Administrator shall review the returned Claim Forms and make the calculations of Allocated Shares pursuant to the Formula.  It shall then report such information to counsel for the Parties.

g. The Just Brakes Parties will begin paying the Subsequent Class Members within 30 days of the Claims Administrator informing the Parties of the amount of each Allocated Share. The entire Portioned Reserve Fund will be paid within 1 year of the date the Claims Administrator informs the Parties of the amount of each Allocated Share. The Just Brakes Parties shall be entitled to a 5% discount off each Allocated Share paid within 90 days of the Claims Administrator informing the Parties of the amount of each Allocated Share.

h. Claims Administrator shall provide a declaration of due diligence and proof of mailing with regard to the mailing of Notices, if requested by counsel or the Court. The costs of any such request by Plaintiffs' Counsel shall be incurred solely by Plaintiffs' Counsel. The costs of any such request by the Court or the Just Brakes Parties shall be incurred by the Just Brakes Parties.

i. Upon completion of the mailing of checks for the Allocated Shares, the Just Brakes Parties will provide Plaintiff's Counsel with a report listing the amount of all payments made to each Subsequent Class Member. A declaration of payment will also be filed with the Court.

j. Subsequent Class Members will have the time allowed under applicable banking laws to cash their Allocated Share checks. If any Subsequent Class Member fails to cash the Allocated Share check within this time period, that Subsequent Class Member will be deemed to have waived irrevocably any right in or claim to the Reserve Fund and such funds shall be returned to the Just Brakes Parties.

## IV. RELEASES

### A. Wage and Hour Release by Consent Plaintiffs:

1. For and in consideration of the Total Consent Plaintiffs' Settlement Amount and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Consent Plaintiffs knowingly and voluntarily release and forever discharge the Just Brakes Parties from any and all wage and hour claims, including any causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown which any of the Consent Plaintiffs ever had or now has against the Just Brakes Parties, based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the Effective Date of this Agreement, including those claims:

   a. asserted in the Lawsuit; and

   b. arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* or any other law governing the payment of wages.

2. Further, with respect to the claims that the Consent Plaintiffs are waiving herein, the Consent Plaintiffs understand, acknowledge, and agree that they are waiving the right to receive money or any other relief in any wage and hour action instituted on their behalf (individually or on behalf of all those similarly situated) by any other person, entity, or

government agency.

3. The Consent Plaintiffs understand, acknowledge, and agree that this Agreement may be raised and/or pled by any of the Just Brakes Parties as a complete defense or bar to recovery by the Consent Plaintiffs in any wage and hour action initiated by the Consent Plaintiffs or on their behalf (individually or on behalf of all those similarly situated) against any of the Just Brakes Parties in any forum, including charges filed by the Consent Plaintiffs or on their behalf (individually or on behalf of all those similarly situated) with an administrative agency including, but not limited to, the Georgia Department of Labor, the U.S. Department of Labor, and/or any other federal, state, or local agency related to acts occurring up to and including the Effective Date.

4. The Consent Plaintiffs acknowledge and agree that the Lawsuit will be dismissed, and that they shall take no further action with respect to the Lawsuit.

5. The Consent Plaintiffs further agree not to voluntarily participate in or encourage other wage and hour proceedings or litigation against any of the Just Brakes Parties and to participate in such proceedings or litigation only if they are compelled to do so by subpoena or other court order. The Consent Plaintiffs agree to notify the Employers within a reasonable period of time after they have learned of such subpoena or other court order. "Reasonable period of time" means sufficiently in advance of the date on which the Consent Plaintiffs must respond to such subpoena or other court order that the Employers can intervene to challenge or quash such subpoena or other court order.

6. The Consent Plaintiffs further agree that neither they nor anyone on their behalf will file or pursue any wage and hour claims, grievances, charges or lawsuits against the Employers for any acts or omissions occurring prior to the Effective Date.

7. As a further consideration and inducement for this Agreement, the Consent Plaintiffs agree and represent that they have not filed, participated in, or otherwise pursued any wage and hour charges, complaints or claims of any nature that are in any way pending against any of the Employers with any local, state or federal government agency, court or arbitration tribunal other than the Lawsuit. If any government agency or court or other tribunal assumes jurisdiction of any charge, complaint, cause of action or claim covered by this Agreement against any of the Employers, on behalf of or related to any of the Consent Plaintiffs, they will take reasonable actions to ensure that such government agency, court, or tribunal withdraws from and/or dismisses the matter, with prejudice, including, but not limited to, requesting such action by such agency or court.

8. It is further understood and agreed that this Agreement and the payments made hereunder constitute full and final satisfaction of all wage and hour claims of every nature, direct or indirect, against all persons, firms, or corporations, including those who are or might be held to be joint and/or successor employers, as to Consent Plaintiffs, the Just Brakes Parties and/or any of the parties released hereby, as well as those to whom any of the parties released are, or may be held to be, liable by way of contribution or indemnity for the payment of all or any part of any claim arising out of, or directly or indirectly related to, the claims set forth in this Agreement.

Settlement Agreement - *Richard Kobelt v. JBRE GA, LLC d/b/a Just Brakes and Eric Passaro*

9. This Release is executed with the full knowledge and understanding on the part of the Consent Plaintiffs that there may be more serious consequences, damages or injuries, which are not now known, and that any benefits conferred herein to the Consent Plaintiffs in consideration of this Release are accepted as final. The Consent Plaintiffs further agree and represent that it is within the Consent Plaintiffs' contemplation that the Consent Plaintiffs may have claims against the Just Brakes Parties of which, at the time of the execution of this Release, the Consent Plaintiffs have no knowledge or suspicion, but the Consent Plaintiffs agree and represents, without affecting the generality of the foregoing paragraphs, that this Release extends to all wage and hour claims in any way based upon, connected with or related to the matters described herein, whether or not known, claimed or suspected by the Consent Plaintiffs.

10. The Consent Plaintiffs acknowledge that they have had reasonable and sufficient time to consider whether or not the Consent Plaintiffs desire to enter into this Agreement. It is understood and agreed that this Agreement is executed by the Consent Plaintiffs knowingly and voluntarily and is not based upon any representations or statements of any kind by any person as to the merits, legal liabilities or value of the Consent Plaintiffs' claims. The Parties also acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement. The Consent Plaintiffs further acknowledge that consideration for this Agreement consists of financial payments and benefits to which the Consent Plaintiffs otherwise have no legal entitlement.

11. As part of this consideration for the conditions of the settlement as set forth above, the Consent Plaintiffs expressly warrant and represent that (a) they are legally competent to execute this Agreement; (b) the Consent Plaintiffs have not assigned, pledged, or otherwise in any manner whatsoever sold or transferred, either by instrument in writing or otherwise, any claim, cause of action, or other legal right of whatever kind and nature, which the Consent Plaintiffs have or may have by reason of the facts and circumstances giving rise to the instant dispute or any matters arising out of or relating thereto; and (c) there are no outstanding subrogation claims or liens of any type or character, by reason of the incident detailed herein.

12. It is understood that the Consent Plaintiffs have the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement and is advised to consult with legal counsel prior to signing this Agreement. The Consent Plaintiffs also acknowledge that before signing this Agreement, the Consent Plaintiffs have read and fully understand each paragraph thereof.

13. The Consent Plaintiffs acknowledge that, upon the Effective Date of this Agreement, the Consent Plaintiffs will fully and irrevocably release any and all claims the Consent Plaintiffs may have against the Just Brakes Parties as specified in this Agreement and the Releases.

B. **Wage and Hour Release by Subsequent Class Members:** Each Claim Form will include a release substantially similar to the one in the above section to be executed by the Subsequent Class Members.

### V. *Dismissal of Lawsuit*:

**A.** On or before January 22, 2016, Counsel for the Parties shall file the Joint Motion for Approval of Settlement Agreement. If the Court does not approve the Settlement, then this Settlement will become null and void (unless the Parties mutually agree otherwise) and the proceedings associated with the Lawsuit will resume as if these papers had never been filed, and the rights and legal positions of all Parties shall be reinstated and restored as they existed December 1, 2015.

**B.** Within 3 business days after the funds for the Attorneys' Fees and the Total Consent Plaintiffs' Settlement Amount are delivered to Plaintiffs' Counsel, the Parties will file a Joint Motion for Partial Dismissal with Prejudice in the Lawsuit. The purpose of this filing is to dismiss with prejudice the claims of Consent Plaintiffs while keeping the case open and retaining the jurisdiction of the Court during the Wind Down Period.

**C.** Once the Wind Down Period has ended and all monies disbursed as agreed, the Parties shall file a Joint Motion to Close and Dismiss the Lawsuit with Prejudice.

### VI. MISCELLANEOUS:

**A.** *Governing Law & Jurisdiction.* This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The Parties agree that any disputes related to this Agreement shall be subject to the jurisdiction of the State of Georgia and any proceedings raised shall take place in any Georgia court in which jurisdiction and venue are proper.

**B.** *Entire Agreement.* This Agreement constitutes the entire agreement between the Parties pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings.

**C.** *Severability.* Each provision of this Agreement is intended to be severable. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the Parties and not be affected thereby.

**D.** *Good Faith*. The Parties expressly agree to execute and abide by the terms of this Agreement in good faith.

**E.** *The Parties' Authority*: The signatories hereto hereby represent that they are fully authorized to enter into this Settlement and bind the Parties hereto to the terms and conditions hereof.

**F.** *Mutual Full Cooperation*: The Parties agree that the Settlement is fair and reasonable and will so represent to the Court. The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including but not limited to, executing of such documents and taking such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties to this Settlement shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary or ordered by the Court, or otherwise, to effectuate this Settlement and

the terms set forth herein. As soon as practicable after execution of this Settlement, Counsel for the Parties will take all necessary steps to secure the Court's approval of this Settlement.

G. ***No Prior Assignments***:  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

H. ***Construction***:  The Parties hereto agree that the terms and conditions of this Settlement are the result of lengthy, arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Settlement.

I. ***Captions And Interpretations***:  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision hereof.

J. ***Modification***:  This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties hereto.

K. ***Binding On Assigns***:  This Settlement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

L. ***Plaintiffs' Counsel Signatories***:  It is agreed that because the Subsequent Class Members are numerous, it is impossible or impractical to have each member execute this Agreement and the Settlement. Plaintiffs' Counsel and the Consent Plaintiffs shall sign this Agreement and acknowledge the Settlement on behalf of the Subsequent Class Members and such shall have the same force and effect as if this Agreement and Settlement were executed by each Subsequent Class Member. The Notice shall advise all putative Subsequent Class Members of the binding nature of the Agreement.

M. ***Counterparts***:  This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties, subject to Court Approval.

N. ***No Appeals***:  The Parties waive all appeals from the Court's final approval of the Settlement unless the Court materially modifies the terms of Settlement. The Parties agree that the joint motion for approval is for purposes of the Settlement only and if, for any reason, the Settlement is not approved, the motion will have no force or effect and will be immediately revoked.

IN AGREEMENT HERETO, the Parties set their hand and seal.

~ Signatures to Appear On Next Page ~

Settlement Agreement - *Richard Kobelt v. JBRE GA, LLC d/b/a Just Brakes and Eric Passaro*

DATED: January _____, 2016     Named Plaintiff:

                                By: _____
                                        Richard Kobelt

DATED: January _____, 2016     Consent Plaintiff:

                                By: _____
                                        Johnny Jones

DATED: January _____, 2016     Consent Plaintiff:

                                By: _____
                                        Michael Tye

                                Consent Plaintiff:

DATED: January _____, 2016     By: _____
                                        Oliver Simon

                                Consent Plaintiff::

DATED: January _____, 2016     By: _____
                                        Kenneth Jackson

                                Consent Plaintiff:

DATED: January _____, 2016     By: _____
                                        Brittany Davis

DATED: January _____, 2016     Consent Plaintiff:
                                By: _____
                                        Joe Korey Brown

DATED: January _____, 2016

                                Consent Plaintiff:
                                By: _____
                                        Ryan Dailey

DATED: January _____, 2016     Attorney For Plaintiffs:


                                By: _____
                                        Mays & Kerr, LLC

Settlement Agreement - *Richard Kobelt v. JBRE GA, LLC d/b/a Just Brakes and Eric Passaro*

| | |
|---|---|
| DATED: January _____, 2016 | Just Brakes Parties:<br><br>JBRE GA, LLC<br><br>By: _____<br>Its: |
| DATED: January _____, 2016 | ERIK PASSARO<br><br>By: _____ |
| DATED: January _____, 2016 | Attorney For Just Brakes Parties:<br><br>By: _____<br>     Gordon & Rees LLP |